SADIE J. FOLLEY, PLAINTIFF-RESPONDENT, v. UNITED BUILDING AND LOAN ASSOCIATION OF HACKENSACK, DEFENDANT-APPELLANT.

GEORGE FOLLEY, PLAINTIFF-RESPONDENT, v. UNITED BUILDING AND LOAN ASSOCIATION OF HACKENSACK, DEFENDANT-APPELLANT.

Submitted January 31, 1936—Decided July 31, 1936.

Before Justices Heher and Perskie.

For the appellant, *Cox & Walburg* (*William H. D. Cox*, of counsel).

For the respondents, *Major, Back & Carlsen* (*James A. Major*, of counsel).

The opinion of the court was delivered by

Heher, J. Plaintiff Sadie J. Folley seeks recovery of damages for injuries claimed to have been tortiously inflicted. Her husband, George, sued *per quod*. The gravamen of the actions is the asserted breach by the defendant landlord of a duty to use "due and proper care to keep and maintain the

stairways of" a dwelling leased to Sadie, by indenture executed by her on or about January 22d, 1934, "in a safe and proper condition." Sadie lost her footing and fell when the heel of her shoe sank into the linoleum on the landing of the cellar stairway, unsupported because of a rotten strip of wood underneath.

The District Court judge, sitting without a jury, found for the plaintiffs; and from the consequent judgments, defendant appeals.

The term of the lease was fourteen and one-half months, to commence on February 15th. However, the lessee entered into possession on February 12th, and on that day suffered the mishap made the basis of these actions; and this court, in reversing a prior judgment in favor of plaintiffs, held that, on the proofs there made, the plaintiff lessee "went into the premises * * * three days before the term of the lease began, apparently without any authority, and, so far as the record discloses, without any knowledge on the part of the defendant," and that there could not be drawn from the evidence "an invitation to the Folleys to enter the premises before the time fixed in the lease or to deduce a legal obligation upon the defendant to have the repairs made before the beginning of the lease term." 13 *N. J. Mis. R.* 293.

The lease did not impose upon the landlord the obligation to make repairs. Plaintiffs rely upon an asserted oral undertaking by the landlord's president, on behalf of his principal, before the making of the lease, to "finish them [the premises] up and put them in first-class order downstairs, and clean them * * *; clean and repair all downstairs."

Upon the retrial, there was introduced, apparently without contraversion, evidence that in the latter part of January, several days after she had executed the lease and paid a portion of the first month's rent, the lessee, to obviate the necessity of providing "coal for the two houses," sought and procured the landlord's permission to enter into possession of the leased premises before the beginning of the stipulated term. There was this conversation, so she testified, relative to the then condition of the premises: *"Q.* What did Colonel

Holley [the landlord's president] say with respect to the condition of the premises at that time? *A.* At that time he said the house was all completed and I could go in at any time and he would have the man in there, the keeper, to move out and let me in." On cross-examination, she testified that "he [Holley] said to me that everything was all right, it was in first class order, and I could go into the house."

The decisive question is whether there was evidence tending to show that the injuries thus compensated were the proximate result of a breach of a duty resting upon the landlord; and we resolve it in the negative.

*First:* The general rule is that, upon the letting of a house or lands, there is no contract or condition implied that the premises are or shall be fit and suitable for the use for which the lessee requires them; and therefore the landlord is not liable for injuries sustained by a tenant, or his family, or guests, by reason of the ruinous condition of the premises demised. *Siggins* v. *McGill,* 72 *N. J. L.* 263; *Bolitho* v. *Mintz,* 106 *Id.* 449; *Reilly* v. *Feldman,* 103 *Id.* 517; *Clyne* v. *Helmes,* 61 *Id.* 358; *Naumberg* v. *Young,* 44 *Id.* 331. Assuming that, in the circumstances, evidence of the claimed parol agreement to repair and put the downstairs premises in "first-class order" was admissible, the performance of that obligation related to the first day of the term; and the undertaking was not breached by a failure of performance before that day.

*Second:* Exceptions to the rule above stated are that where the landlord assumes a binding contractual obligation to repair (or, perhaps, where he reserves the right of entry for that purpose in event of the lessee's default in the performance of a like undertaking), or negligently makes repairs gratuitously undertaken, he is liable in damages for the breach of duty so arising. In the first case, as in the second, the breach in essence is tortious and not contractual, *i. e.,* the failure of a legal duty that is denominated negligence. But this affirmative duty to repair, the negligent non-performance of which subjects the

landlord to an action in tort for the consequential damages, arises only when the agreement of the parties has the elements of a binding contract. At common law, a mandatary was answerable only for misfeasance as distinguished from non-feasance. *Vollkommer* v. *Menge,* 116 *N. J. L.* 82. And in this state, a well settled principle of the law of contracts limits the class to whom the duty is owing. *Clyne* v. *Helmes, supra; Reilly* v. *Feldman, supra; Vollkommer* v. *Menge, supra.* It is likewise the established rule that a promise by the lessor, made subsequent to the execution and delivery of the lease, to make repairs, or to abate a portion of the rent, is unenforceable. *Levine* v. *Blumenthal,* 117 *Id.* 23; *Clyne* v. *Helmes, supra.* See, also, *Williston on Contracts (Rev. Ed.),* § 142. So testing the instant case, the landlord did not assume a legal obligation in respect of the condition of the premises by reason of anything said by its president when, subsequent to the making of the contract of lease, consent was given to the lessee to enter, solely for her own benefit and advantage, into possession of the premises before the commencement of the stated term.

*Third:* In respect of her possession of the premises for the period of three days before the contract term began, the injured plaintiff had the status of a licensee merely. No rent was paid for this period. Nor did she assume any such undertaking; and, under the circumstances, none could be reasonably implied. In fact, it is conceded that, as to this period, hers was not the status of a tenant, either under the lease or otherwise. Respondent urges that she was an invitee, and, pointing out that the case was tried on this theory, and not on the supposition of a breach of a duty growing out of the relation of landlord and tenant, now moves for an appropriate amendment of the state of demand. But this is obviously a misconception. The premature taking of possession was to further her own interests, and in no sense to advance those of the landlord. It was solely for her accommodation and benefit. There was no mutuality of interest. See *Morril* v. *Morril,* 104 *N. J. L.* 557; *Moersdorf* v. *New York Telephone Co.,* 84 *Id.* 747; *Delaware, Lackawanna and Western*

*Railroad Co.* v. *Reich,* 61 *Id.* 635; *Fitzpatrick* v. *Glass Manufacturing Co.,* 61 *Id.* 378; *Phillips* v. *Library Co.,* 55 *Id.* 307; *Saunders* v. *Smith Really Co.,* 84 *Id.* 276; *Fleckenstein* v. *Great Atlantic and Pacific Tea Co.,* 91 *Id.* 145; *Mathews* v. *Bensel,* 51 *Id.* 30; *Vanderbeck* v. *Hendry,* 34 *Id.* 467; *Turess* v. *New York, Susquehanna and Western Railroad Co.,* 61 *Id.* 314. As already indicated, there was no evidence of a willful or wanton injury. It results that the judgments are not soundly based.

Judgments reversed, and causes remanded for further proceedings in conformity with this opinion.